[Cite as *Turnmire v. Turnmire*, 2022-Ohio-3968.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| MARTHA TURNMIRE, | : | |
| Appellant, | : | CASE NO. CA2021-12-165 |
| | : | O P I N I O N |
| - vs - | | 11/7/2022 |
| | : | |
| MARSHA TURNMIRE, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2020 11 17547

Kirkland & Sommers, Co., and James R. Kirkland and Mickenzie R. Grubb, for appellant.

Law Office of David A. Chicarelli Co., LPA, and David Allen Chicarelli, for appellee.

**S. POWELL, J.**

{¶ 1}   Plaintiff-appellant, Martha Turnmire, appeals the decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Marsha Turnmire, on her claims of unjust enrichment, breach of contract, conversion, and

fraud. For the reasons outlined below, we affirm the trial court's decision.

## I. Factual and Procedural Background

{¶ 2}   In May 2005, John and Martha Turnmire were granted a dissolution of their marriage by a Florida court.[1]  John had retired from service in the military and participated in the Survivor Benefit Plan (SBP), which, upon the service member's death, provides an annuity payable monthly to the retired service member's designated beneficiary.  John also had a Veterans Group Life Insurance (VGLI) policy through the military.[2]  At the time of the divorce, the designated beneficiary of the SBP annuity and the VGLI policy was John's wife, Martha.  The dissolution decree ordered John to keep Martha the beneficiary of both:

> 6. **MILITARY RETIREMENT BENEFICIARY**: Pursuant to the provisions of 10 U.S.C. 1448 and 10 U.S.C. 1450, the Husband shall irrevocably elect the Wife as his survivor beneficiary under the terms of his military retirement plan within thirty (30) days from the date of this final judgment.  In the event that the Husband shall, for any reason, fail to make said election as ordered, upon presentation of a copy of this final judgment to the Secretary of Defense, pursuant to 10 U.S.C. 1450 (f)(3), the Husband shall be deemed to have made said election.

> 7. **LIFE INSURANCE**: In order to secure the alimony awarded herein, the Husband shall continue to maintain the policy of life insurance upon his life which he maintains through the "Veterans Government Life Insurance" which shall provide for death benefits in an amount not less than $200,000.00.  The Husband shall irrevocably designate the Wife as his beneficiary to the extent of $200,000.00 under said policy.  Upon entry of this final judgment of dissolution of marriage the Husband shall, within ten (10) days from the date hereof, supply the Wife with written evidence that the said policy of life insurance remains in full force and effect.  Annually thereafter on the anniversary date of this final judgment, the Husband shall provide the Wife with written evidence that the said life insurance with the said designated death benefits in favor of the Wife remains in full force and effect.

---

1. Under Florida law, the Dissolution of Marriage Act is the state's no-fault divorce law.  A marriage in Florida is ended by either dissolution or annulment.

2. We refer to the principal players in this case by their first names to avoid confusion.

The dissolution decree also ordered John to pay Martha alimony (spousal support). Later that same year, John married Marsha.

{¶ 3} In 2008, John asked the Florida court to reduce his alimony obligation. The following year, after a hearing, the trial court agreed to do so. The 2009 modification order again ordered John to keep Martha as the designated beneficiary of the SBP and the beneficiary of his VGLI policy:

> F. The Former Husband's obligation to name the Former Wife as an irrevocable beneficiary of $200,000 in life insurance is reduced to $150,000. The Former Husband shall be entitled to make such a modification to his life insurance by January 31, 2009, or once alimony and arrearage payments are being made to the Former Wife by Income Deduction Order, whichever occurs first.
>
> G. The Former Husband shall provide proof that a policy for life insurance, naming the Former Wife as a beneficiary, consistent with this Order, is in place and in good standing within ten (10) days of the date such beneficiary is changed, pursuant to this Order. The Former Husband shall thereafter provide such proof to the Former Wife each year, by the same date.
>
> H. The Former Husband's obligations, regarding survivorship benefits, shall not change.

{¶ 4} In November 2020, John died, with Marsha as his surviving spouse. It was then Martha discovered that John not only had reduced the VGLI policy to $50,000 but also, in 2007, had changed the beneficial interest in the proceeds, leaving Marsha the bulk of proceeds and Martha only a $5,000 annuity. In addition, Marsha, as the surviving spouse, began receiving monthly payments from the SBP annuity because Martha had never been elected as the beneficiary.

{¶ 5} Martha filed an action against Marsha asserting claims of unjust enrichment, breach of contract, conversion, and fraud. Martha sought to impose a constructive trust over the VGLI proceeds and the SBP payments. The parties filed cross-motions for summary judgment. The trial court concluded that federal law preempted the state law

embodied in the Florida dissolution decree as to the beneficial interests in the VGLI policy and the SBP annuity and concluded that it had no authority to order an equitable remedy that circumvented federal law. The court therefore granted Marsha's motion for summary judgment and denied Martha's motion.

{¶ 6} Martha appealed.

## II. Analysis

{¶ 7} Martha's sole assignment of error alleges that the trial court erred by granting Marsha's motion for summary judgment and denying her motion. Martha contends that she is entitled to the VGLI proceeds and to the SBP annuity. We note that she does not allege that Marsha is at all culpable in these matters. And based on the record, we agree that it appears Marsha is innocent of any wrongdoing. Her role was entirely passive.

{¶ 8} Summary judgment, under Civ.R. 56(C), is appropriate if the moving party shows "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

### A. The Veterans Group Life Insurance

{¶ 9} We first consider the VGLI proceeds. The federal Servicemembers' Group Life Insurance Act (SGLIA), 38 U.S.C. 1965 et seq., makes life insurance coverage available to members of the military. When a service member leaves the military, SGLI coverage terminates, and the service member may convert the policy into a new policy under the VGLI program. *See* 38 U.S.C. 1968(a)(1), 1977. The provisions of the SGLIA that control the beneficiaries of the insurance also apply to VGLI policies. *See* 38 U.S.C. 1970(a). Simply put, "[f]ederal law and federal regulations bestow upon the service member

an absolute right to designate the policy beneficiary" and to change the beneficiary at any time. *Ridgway v. Ridgway*, 454 U.S. 46, 59-60, 102 S.Ct. 49 (1981). *See also* 38 U.S.C. 1917(a) (stating that a service member has "the right to designate the beneficiary or beneficiaries of insurance" and has "at all times * * * the right to change the beneficiary or beneficiaries"); 38 C.F.R. 9.4(b) ("A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary"). In addition, an anti-attachment provision in the SGLIA shields insurance payments to a beneficiary from "claims of creditors" and states that the payments "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. 1970(g).

{¶ 10} The Supreme Court held in *Ridgway* that these SGLIA provisions "prevail over and displace inconsistent state law," which includes the state law embodied in a divorce decree. In *Ridgway*, the Court considered the preemptive effect in a factual situation almost identical to the one in the present case. At the time of the parties' divorce, the former wife was the designated beneficiary of the husband's SGLIA policy. The husband agreed that he would maintain the policy for the benefit of the parties' children, and his agreement was incorporated into the divorce decree. The husband soon remarried and changed the policy's beneficiary designation, directing the proceeds to be paid as specified "by law," which, under the SGLIA's order of precedence, begins with the surviving spouse. After the husband died, both his former wife and his surviving spouse filed claims for insurance proceeds. The former wife argued that the surviving spouse had been unjustly enriched and that under state law a constructive trust should be imposed on the proceeds for the children's benefit. But the Supreme Court rejected this argument, concluding that the SGLIA preempts the divorce decree. The Court held invalid the decree's provision restricting the husband's right to change his SGLI policy beneficiary. The Court also held

that the imposition of a constructive trust on the proceeds was inconsistent with the SGLIA's anti-attachment provision. "Any diversion of the proceeds," explained the Court, "by means of a court-imposed constructive trust would * * * operate as a forbidden 'seizure' of those proceeds." *Ridgway* at 60. In sum, the Court found that "'Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.'" *Id.* at 56, quoting *Wissner v. Wissner*, 338 U.S. 655, 658, 70 S.Ct. 398 (1950). It matters not, said the Court, that the husband "misdirected property over which he had exclusive control" and "[i]n doing so, * * * deprived the [former wife and his children] of benefits to which they were entitled under state law." *Id.* at 59, fn. 8.

{¶ 11} Martha does not dispute any of this. What she contends is that an exception to preemption in cases of fraud applies in this case. The Supreme Court recognized this exception in *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089 (1962). The issue in *Free* concerned survivorship rights in U.S. savings bonds where federal regulations conflicted with state law. A married couple had jointly purchased and owned savings bonds. When the wife died, state law said that the bonds were community property and were subject to probate as part of the deceased wife's estate, which meant that the husband had to pay the estate for his wife's interest. But under federal regulations the husband had a right of survivorship in the bonds. The Court held in *Free* that the federal regulations prevailed over the inconsistent state law and that the husband was entitled to the bonds. In its decision, the Court noted, but did not apply, an exception for fraud, saying that "[t]he regulations are not intended to be a shield for fraud and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property." *Free* at 670.

{¶ 12} The Supreme Court considered the "scope and application" of fraud exception

in *Yiatchos v. Yiatchos*, 376 U.S. 306, 307, 84 S.Ct. 742 (1964). Like *Free, Yiatchos* concerned survivorship rights in savings bonds that were considered community property under state law. "Under the federal regulations," said the Court, "petitioner is entitled to the bonds unless his deceased brother committed fraud or breach of trust tantamount to fraud." *Yiatchos* at 309. And "whether or not there is fraud which will bar the named beneficiary in a particular case must be determined as a matter of federal law." *Id.*, citing *Free* at 670-671. In the end, the Court remanded the case to develop a factual record on whether the conduct amounted to fraud or breach of trust for federal purposes sufficient to be an exception to preemption. *Id.* at 310, 313.

{¶ 13} Importantly, in *Ridgway*, the Supreme Court distinguished *Yiatchos* and "in effect limit[ed] *Yiatchos* to situations in which a person had fraudulently divested a victim of *the victim's own* property." (Emphasis sic.) *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 581 (7th Cir.1992), citing *Ridgway*, 454 U.S. 46, 58-60, 59, fn. 8, 102 S.Ct. 49. In *Ridgway* "only [the husband] had the power to create and change a beneficiary interest in his SGLIA insurance." *Ridgway* at 60. "By exercising that power," said the Court, "he hardly can be said to have committed fraud." *Id.*

{¶ 14} Courts in other jurisdictions have also recognized that the fraud exception is limited and have declined to extend it. The Ninth Circuit Court of Appeals in *McNabb v. U.S. Dept. of the Army*, 623 Fed.Appx. 870 (9th Cir.2015), held that *Yiatchos* does not support an exception for lack of notice of a change in beneficiary occasioned by a service member's fraud. The court pointed out that *Yiatchos* involved a fraud ""on the part of a husband while acting in his capacity as manager of the general community property."" *McNabb* at 873, quoting *Yiatchos* at 307, quoting *Free* at 670. "A SGLI policy is not community property." *Id.* A North Carolina appellate court in *Lewis v. Estate of Lewis*, 137 N.C.App. 112 at 117 (2000), held that "any alleged violation of state law by decedent or order of a state court

does not defeat the provisions of SGLIA." The court noted that "the *Ridgway* court never stated that fraud or breach of fiduciary duty by a servicemember would defeat the provisions of SGLIA. In dicta, the Court merely pointed out that the beneficiary and anti-attachment provisions of SGLIA may possibly be overcome in circumstances where a claimant had property rights in the proceeds." *Id.* "Unlike *Yiatchos*," said the court, "the present case does not concern federal bonds or community property." *Id.* The Tenth Circuit Court of Appeals in *Metropolitan Life Ins. Co. v. McMorris by McMorris*, 786 F.2d 379 (10th Cir.1986), held that the facts alleged by the wife, facts much like those in the present case, did not amount to the kind of fraud warranting protection. The wife contended that there was no preemption of the state law embodied in the divorce decree because the husband had committed fraud by allowing the trial court to order that he maintain a particular life insurance policy for her benefit when no such policy was then in effect, and by not designating her as a beneficiary of another life insurance policy. *See also Mills v. Prudential Ins. Co. of America*, 856 F.Supp.2d 1218 (D.Colo.2012) (holding that the wife of a deceased service member was not entitled to benefits under SGLI policy designating the service member's brother as beneficiary, where a restraining order in his divorce action prohibited service member from changing the beneficiary designation and wife was the named beneficiary at the time of the order).

{¶ 15} In Ohio, the Third District Court of Appeals in *Concepcion v. Concepcion*, 131 Ohio App.3d 271, 281-282 (3d Dist.1999), held that the SGLIA preempted state law with respect to a SGLI policy and required that the designation of the new beneficiary be recognized, even though the change violated a court order. The appellate court construed *Ridgway* and *Free* "to stand for the proposition that in limited circumstances the imposition of a state-based remedy may be appropriate," giving as an example "the case where the insured has been coerced or unduly influenced in his or her selection of a beneficiary." *Id.*

at 282. Thus the court limited the fraud exception to fraud related to the beneficiary change itself. Ultimately, the court held that the facts of the case did not "fall within the ambit of such an exception" and also concluded that imposing a constructive trust on the proceeds of the SGLI policy was an inappropriate remedy. *Id.*

{¶ 16} In the present case, Martha alleges that during the 2008 dissolution-decree modification proceedings John engaged in fraudulent behavior by not telling the Florida trial court, or her, that he had, in fact, already changed his life insurance beneficiary to Marsha. We agree with the rationale in the above cases and decline to extend the *Yiatchos* fraud exception to the facts of the present case. The type of fraud that John allegedly committed does not qualify for the fraud exception to preemption with respect to the VGLI policy. It is not fraud in the beneficiary change per se. In other words, Martha does not allege that John's decision to change the beneficiary to Marsha was affected by fraud. Rather, Martha alleges that it was John's exercise of his power to make the change that was wrongful, because the trial court had ordered him to keep her as the designated beneficiary. But John had the absolute right to exercise his power to make the change and his doing so is not fraud that warrants protection from preemption. *See McMorris.*

{¶ 17} We observe that this result is not quite as harsh as it might seem. The dissolution decree explicitly orders John to provide Martha with annual proof that she was the beneficiary. Evidently, he did not do this. But more importantly, it appears that Martha never asserted her right to proof. If she had, she would have known about the beneficiary change years ago and might have been able to do something then. Martha sat on her rights for years and is now suffering the consequence.

{¶ 18} In sum, we conclude that John's alleged fraud—even if it could be proved—does not bar preemption of the dissolution decree by the controlling provisions of the SGLIA. Which means that Marsha is the proper beneficiary of the life insurance proceeds.

**B. The Survivor Benefit Plan Annuity**

{¶ 19} Next, we consider Martha's claim to John's Survivor Benefit Plan annuity. The Survivor Benefit Plan (SBP), 10 U.S.C. 1447 et seq., was created to provide an annuity payable to survivors of a retired military service member. Under the SBP, premiums are deducted from the service member's retirement pay, and when the service member dies, a monthly annuity is paid to the service member's designated beneficiary. The former spouse of a service member may be designated the beneficiary. Under federal law, if the service member is required by court order to elect the former spouse as beneficiary and fails or refuses to do so, the service member is "deemed" to have made the election, provided that the former spouse sends the appropriate military Secretary a written request for a deemed election, along with a copy of the court order. 10 U.S.C. 1450(f)(3)(A). A deemed election must be made within one year of the court order: "An election may not be deemed to have been made under subparagraph (A) in the case of any person unless the Secretary concerned receives a request from the former spouse of the person within one year of the date of the court order or filing involved." 10 U.S.C. 1450(f)(3)(C). Federal law also contains a provision exempting a SBP annuity from certain legal processes: the annuity "is not assignable or subject to execution, levy, attachment, garnishment, or other legal process." 10 U.S.C. 1450(i).

{¶ 20} Martha does not dispute that the controlling provisions of federal law governing SBP annuities preempt state law, including her dissolution decree. Nor does she dispute that if a deemed election is not timely made under federal law, the former spouse has no right to the SBP annuity. What Martha argues is that there is a genuine issue of material fact as to whether a deemed election was made. She contends that the evidence shows that a proper deemed election was made and that the Secretary or the Defense Finance Accounting Service (DFAS), which maintains SBP election records and processes

SBP election changes, has erred by not recognizing her as the rightful beneficiary.

i. *No evidence that a deemed election was timely made*

{¶ 21} Martha concedes that she did not file a election request herself. Rather, she maintains that the attorney who handled her divorce submitted a timely written request and that the attorney received written acknowledgment of the submission from DFAS. Martha contends that her deposition testimony on this matter creates a genuine issue of fact as to whether a deemed election was properly made. This was her testimony:

> Q. [The attorney talks about the form that needs to be filed within one year to convert SBP coverage. Then he asks:] Did you do that?
>
> A. Sir, I have an attorney that did all that paperwork for me. I believe he did it. (Martha Dep. 11).
>
> Q. * * * You would be receiving benefits had you done that, and you're not receiving benefits.
>
> A. My attorney did it, sir.
>
> Q. Okay. That's what you believe?
>
> A. Yes, sir, I believe my attorney did it.
>
> Q. Have you asked your attorney did you submit within a year of the divorce the appropriate documentation to elect from spouse to former spouse coverage within one year?
>
> * * *
>
> [A.] The attorney did receive paperwork back that he had filed whatever paperwork was necessary. (*Id.* at 12).
>
> Q. You, yourself, didn't do it. You believe your attorney did it?
>
> A. Correct, sir. (*Id.* at 13).
>
> Q. Okay. And just let me summarize just to make sure and formalize again my request. You've told me that you believe your Florida attorney made the election within one year of the divorce decree in '05 to designate you after the divorce as the survivor, correct?

A. My Florida attorney handled all that paperwork, yes, sir.

Q. Right, and that's what you've told me, and you believe he did it, correct?

A. I do believe he did it, yes, sir.

Q. And you're going to contact him and get—I'm making a formal demand for copies of that demand, that election that you believe he made. Okay? You're going to contact him and get copies of those papers, correct?

A. If that's what I'm supposed to do, yes, sir.

Q. Yes, it is, ma'am. You're being asked under oath during a deposition to produce those documents.

{¶ 22} In addition to the election request and the acknowledgment from DFAS, there is one other piece of documentary evidence to consider. In her briefs, Martha states that she provided Marsha's attorney with "a detailed letter from [her] former counsel outlining the exact arguments as to why the paperwork was timely filed." But this letter was not submitted as evidence, is not in the record, and may not now be added to the record, *see State ex rel. Harris v. Turner*, 160 Ohio St.3d 506, 2020-Ohio-2901, ¶ 16 ("A reviewing court generally may not add matter to the record before it and then decide the appeal on the basis of the new matter"). While Marsha's attorney admitted during oral arguments that he had received the letter, Marsha never stipulated to or formally admitted anything about it. In short, the letter is not evidence and is irrelevant for summary judgment purposes. *See* Civ.R. 56(C) (stating that a summary judgment must be rendered "only from the evidence or stipulation").

{¶ 23} Neither the written election that Marsha asserts her attorney submitted nor the acknowledgment from DFAS that she asserts her attorney received are in the record. There is only her testimony.

{¶ 24} When ruling on a motion for summary judgment, a trial court generally may

- 12 -

consider only evidence that would be admissible at trial. *Lowe v. Cox Paving, Inc.*, 190 Ohio App.3d 154, 2010-Ohio-3816, ¶ 27 (12th Dist.), citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 631, fn. 4 (1992) ("Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment"). Deposition testimony, in particular, must be admissible under the rules of evidence, Evid.R. 32(A), and, like affidavit testimony, must be based on personal knowledge. Civ.R. 56(D); *Reardon v. Hale*, 12th Dist. Warren No. CA2006-09-105, 2007-Ohio-4351, ¶ 21-22.

{¶ 25} Martha's deposition statement concerning the acknowledgment received by her attorney is hearsay. She was asked whether she had asked her attorney if he had submitted the written request for the election. She responded: "The attorney did receive paperwork back that he had filed whatever paperwork was necessary." In context, then, Martha's statement is plainly based on what her attorney had told her and was intended to prove that an election request had been submitted. Hearsay—a statement other than one made by the declarant while testifying at the trial offered in evidence to prove the truth of the matter asserted—is not admissible at trial unless an exception applies. Evid.R. 801 and 802. Accordingly, "[b]ecause Civ.R. 32 and Civ.R. 56(D) both specifically limit the court's consideration to admissible evidence, hearsay evidence may not be properly considered when proffered by a party in a deposition or affidavit in opposition to a motion for summary judgment unless a specific exception applies." *Reardon* at ¶ 23. *See also N. Am. Herb & Spice Co., LTD, LLC v. Appleton*, 12th Dist. Butler No. CA2010-02-034, 2010-Ohio-4406, ¶ 49; *Bank of America, N.A. v. Shailer*, 2d Dist. Montgomery No. 29036, 2021-Ohio-3939, ¶ 15 ("Absent an exception, hearsay may not be considered in a motion for summary judgment"). Martha did not submit an affidavit from her attorney to support her testimony, nor, as we said, are there any election documents in the record. Martha's statement

constitutes inadmissible hearsay to which no exception applies.

{¶ 26} The rest of Martha's testimony lacks a personal-knowledge basis. If a witness does not have firsthand, personal, knowledge of the matter, the witness is incompetent and her testimony is inadmissible. Evid.R. 602.

{¶ 27} The problem with the testimony is not that Martha was a little unsure what her attorney had done. Almost all her answers are prefaced with "I believe," suggesting that she was somewhat uncertain whether her attorney had, in fact, submitted a written request for a deemed election. But "expressions of uncertainty affect the weight, not the admissibility, of the evidence." 1 Baldwin, *Ohio Practical Evidence*, Rule 602 (4th Ed. 2021). Evidence is inadmissible under Evid.R. 602 only if the witness could not have actually perceived or observed what she is testifying about. *See M. B. A. F. B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir.1982), citing 2 Wigmore, *Evidence*, Section 658 (Chadbourn Rev.1979), and 3 Weinstein & Berger, *Weinstein's Evidence*, Section 602(02) (1981). So "[a] witness's expression of uncertainty, such as 'I think,' 'I believe,' or 'I'm not positive,' is not ground for exclusion so long as the witness 'had an opportunity of personal observation and did get some impressions from this observation.'" 1 Baldwin, *Ohio Practical Evidence*, Rule 602 (4th Ed.2021). *See also id.* ("[Federal] Rule 602 * * * does not require that the witness' knowledge be positive or rise to the level of absolute certainty").

{¶ 28} The problem is that Martha's testimony lacks a permissible basis. Her testimony that she "believed" her attorney had submitted an election request has one of three possible bases: she saw him submit the request, he told her that he submitted it, or he told her that he would submit it. Martha did not testify that she saw her attorney submit the request, nor does her testimony support such an inference. The first basis, then, violates the firsthand-knowledge rule. The second two bases implicate a statement of

another person (her attorney) to prove submission, so they violate both the firsthand-knowledge rule and the hearsay rule. Ultimately, considering the whole of Martha's deposition testimony on this matter, it is reasonable to infer that all of it is based solely on what her attorney had told her. Which means that all Martha's testimony is inadmissible both because it is based on hearsay and because she lacks personal knowledge. *See Lowe*, 190 Ohio App.3d 154, 2010-Ohio-3816, at ¶ 28 (deposition testimony on which appellant relied was hearsay and inadmissible in the summary judgment context); *In re D.K.*, 185 Ohio App.3d 355, 2009-Ohio-6347, ¶ 24 (6th Dist.) (testimony about the contents of records inadmissible where the records themselves were not in evidence and the witness testified only that he had seen the records and there was no testimony that the witness had any direct knowledge of the events recorded in the records). In essence, Martha was merely speculating about what her attorney had done. And "[m]ere speculation is insufficient to create a genuine issue of material fact to avoid summary judgment." (Citation omitted.) *Fontain v. H&R Cincy Properties, LLC*, 12th Dist. No. CA2021-02-015, 2022-Ohio-1000, ¶ 67 (stating that plaintiff offered only "mere speculation in support of his contention" that an attorney filed certificates of judgment).

{¶ 29} We recognize that there was never an objection to Martha's deposition testimony, either directly during the deposition or to the trial court. "[O]bjections to hearsay evidence are not waived by failure to make them during the taking of a deposition." *Golden v. George Gradel Co.*, 6th Dist. Lucas No. L-88-091, 1989 WL 24210, *2 (Feb. 17, 1989) (citing Civ.R. 32[D][3][a]). Although a court may consider nonconforming summary judgment evidence if neither party objects, it is not required to consider such evidence. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 12 (12th Dist.); *A-M.R. v. Columbus City School Dist.*, 10th Dist. No. 14AP-1066, 2015-Ohio-3781, ¶ 38; *Armaly v. City of Wapakoneta*, 3d Dist. Auglaize No. 2-05-45, 2006-Ohio-3629,

¶ 23; *Bell v. Holden Surveying, Inc.*, 7th Dist. Carroll No. 01 AP 0766, 2002-Ohio-5018, ¶ 22. A court may "on its own, without objection," determine that proffered evidence is "not permissible evidence under Civ.R. 56(C)." *Spagnola v. Spagnola*, 7th Dist. Mahoning No. 07 MA 178, 2008-Ohio-3087, ¶ 40 (concluding that the trial court "could have on its own, without objection from appellant, determined that the report was not permissible evidence"); *see also Bell* at ¶ 22 (stating that the trial court was permitted "to sua sponte determine that the documentation attached to the summary judgment is not in conformity with the requirements of Civ.R. 56[C]"). We have concluded that Martha's deposition testimony on the election question is inadmissible both because it is hearsay and because it is not based on her personal knowledge. We do not consider this evidence in our de novo review of Martha's genuine-issue-of-material-fact argument.

{¶ 30} Martha has failed to show that a genuine issue of fact exists as to the SBP benefits. Once her testimony is excluded for Civ.R. 56 purposes, no evidence remains on which it would be reasonable to find that a deemed election was made. Therefore, under federal law, Martha is not entitled to the SBP annuity.

### ii. *No authority to grant relief*

{¶ 31} Summary judgment is also appropriate for the reason that the trial court intimated in its decision: the court has no authority to do anything for Martha and any relief must come from the Secretary. Martha argues that the Secretary or DFAS erred in applying the applicable federal statutes and that the only just way to resolve this matter now is either to allow the case to continue until full discovery is completed, and any communications with DFAS are revealed, or to impose a constructive trust to carry out the legislative intent of the SBP program. Implicit in this argument is the premise that the trial court can grant a legal remedy or equitable relief. But if state law is preempted, as Martha concedes, even if she could prove that the election request was timely filed and that the Secretary or DFAS has

- 16 -

made a mistake, the trial court has no authority to correct the mistake. The trial court cannot order a change to the beneficiary designation of the SBP annuity. Nor would it be appropriate for the trial court to impose a constructive trust over the annuity payments.

{¶ 32} It appears that no Ohio court has addressed the issue whether, more than a year after the divorce decree, a state court can designate a former spouse the beneficiary of a deceased service member's SBP annuity. But there are cases addressing this issue in other jurisdictions, and they uniformly hold that if a deemed election is not timely made, the former spouse has no right to the SBP annuity, regardless of what the divorce decree says.

{¶ 33} The first case to have really considered the issue is *King v. King*, 225 Ga.App. 298 (Ga.App.1997). In *King*, the husband voluntarily entered into a written agreement to provide his former wife with former-spouse SBP coverage and that agreement was incorporated into the divorce decree. But neither husband nor wife complied with the applicable provisions of the SBP governing election of a former spouse as the beneficiary of the annuity. Husband eventually remarried, and after he died, his surviving spouse began receiving payments as the beneficiary of the annuity. The former wife brought an action against the surviving spouse seeking imposition of a constructive trust over the benefits being paid to her, claiming, based on the divorce decree, that she was the rightful beneficiary of the SBP benefits.

{¶ 34} The appellate court concluded that the federal law governing SBP annuities prevailed over the divorce decree. The court explained that

> the provisions of the SBP specifically set forth the conditions under which a former spouse awarded SBP benefits in a state court divorce decree may thereafter be elected as the beneficiary of the annuity under the SBP and become entitled to receive the annuity. Moreover, Congress has declared that an annuity under the SBP "is not assignable or subject to execution, levy, attachment, garnishment, or other legal

process."

*King* at 301, quoting 10 U.S.C. 1450(i). The court continued:

> In providing the means by which former spouses may become entitled to SBP annuity benefits, Congress enacted plain and precise statutory language placing conditions and limits on that right and made clear that any annuity benefits paid in compliance with the provisions of the SBP are not subject to legal process. Since the provisions of the SBP unambiguously preclude the rights asserted under the divorce decree, we further conclude that the consequences of enforcing the conflicting state law principles sufficiently injures the objectives of the SBP so that federal law preempts the authority of state law.

*Id.* The court thus concluded that the right to the annuity asserted by the former wife under the divorce decree "clearly conflicts with the express provisions of the SBP" under which the surviving spouse is the beneficiary and held that the surviving wife did not have a right to receive the SBP annuity. *Id.*

{¶ 35} *King*'s ultimate holding—that federal law preempts state law as to a former spouse's right to claim entitlement to an SBP annuity—has been adopted by courts in several other states. *See Silva v. Silva*, 333 S.C. 387 (S.C.App.1998) (finding *King*'s reasoning persuasive); *Wise v. Wise*, 765 So.2d 898 (Fla.App.2000) (citing *King* and *Silva*); *Dugan v. Childers*, 261 Va. 3 (2001) (finding the reasoning in *King* persuasive); *Watson v. Watson*, 263 N.C.App. 404 (2018) (holding that it lacked authority to preempt the time restrictions in the federal SBP provisions); *McCallister v. McCallister*, 105 N.E.3d 1114 (Ind.App.2018) (holding that trial court's order directing husband to reinstate his former wife as the SBP beneficiary could not be enforced).

{¶ 36} In *McCallister*, which features a situation quite like the one in the present case, the husband voluntarily entered into an agreement to designate his wife as the beneficiary of the SBP. At the hearing on wife's motion for rule to show cause, the husband testified that upon signing the agreement, he submitted the paperwork the next day designating his

wife as the beneficiary of the SBP. The wife testified that her attorney at the time apparently received some paperwork and told her that there was nothing more she needed to do. At the time of the designation, however, husband and wife were still married. Their divorce was not finalized until later, after which husband failed to comply with the court's order and execute the necessary forms to ensure that his now former wife was designated as beneficiary. The husband remarried and changed the SBP beneficiary designation from his former wife to his current wife, which was a clear violation of the terms of the parties' agreement. There was no evidence that the husband made any attempt to inform his former wife that she was no longer the designated beneficiary on the SBP. And it was not until three years later that the former wife learned that she was not the designated beneficiary. The Indiana appellate court agreed with *Wise* and *King* and concluded that, despite the husband's violation of the agreement, the trial court's order directing him to reinstate his former wife as the beneficiary of the SBP could not be enforced. Said the court: "because [husband] failed to comply with the divorce decree and the SBP statutory deadline of one year for election of a former spouse as beneficiary and [former wife] did not request within one year that an election be deemed, [former wife] cannot now obtain beneficiary status with regard to [husband's] SBP." *McCallister* at 1119.

{¶ 37} The Virginia Supreme Court explained in *Dugan* why a constructive trust cannot be imposed. In that case, the former spouse brought an equity proceeding against the surviving spouse seeking imposition of a constructive trust over SBP annuity payments. The divorce decree incorporated a property settlement agreement in which the husband agreed to elect his former spouse as the beneficiary of the SBP annuity. The husband remarried and changed the SBP beneficiary to his new wife. The trial court found him in contempt, and he was ordered to change the beneficiary back to the former spouse. But husband died without making the change, and his surviving spouse began receiving the

benefits. The former spouse did not make a timely request for a deemed election. The surviving spouse argued that the governing federal law preempted state law as to the former spouse's entitlement to the SBP benefits and that the former spouse's failure to timely request a deemed election barred her recovery based on a theory of constructive trust. The supreme court agreed, finding the reasoning in *King* persuasive. The court emphasized that *King*'s conclusion is well supported, that "the consequences of enforcing the conflicting state law principles sufficiently injure[s] the objectives of the SBP so that federal law preempts the authority of state law." *King* at 383. To award the former wife the SBP benefits, said the Virginia Supreme Court, "would seriously conflict with and effectively cancel both the 'plain and precise' one-year limitation Congress placed on a former spouse's right to claim the benefits and the clear prohibition against subjecting an annuity to legal process." *Dugan* at 10. The court emphasized that "[t]he 'non-alienation' provision [in 10 U.S.C. 1450(i)] would be sufficient alone to require a finding of preemption in this case," saying that "other legal process" "encompasses the imposition of a constructive trust upon annuity benefits." *Id.* The court pointed out that "[a] constructive trust is just as effective in thwarting the purposes of an annuity as an execution, levy, attachment, or garnishment, and the 'non-alienation' provision is intended to protect federal annuity benefits from all such legal processes." *Id.*

{¶ 38} We find the reasoning in *King*, and its progeny, including *Dugan*, convincing. Following those courts, we conclude that federal law governing SBP annuities preempts Ohio state law as to a former spouse's right to claim entitlement to an SBP annuity. Thus, the trial court could not provide Martha the relief that she seeks. It could not order that the beneficiary of John's SBP annuity be changed or impose a constructive trust.

{¶ 39} Which is not to say that Martha is necessarily without recourse, but only to say that if she is entitled to relief, it likely cannot come from a state court. As we have

concluded, the matter of SBP beneficiaries is preempted by federal law. Federal law provides that it is the Secretary of the military department concerned who may "correct or revoke any election" "to correct an administrative error," 10 U.S.C. 1454(a), and may "correct any military record" "to correct an error or remove an injustice," 10 U.S.C. 1552(a)(1). The latter correction is done through a civilian board within the military service, whose decisions are "'are subject to judicial review [by federal courts].'" *Clinton v. Goldsmith*, 526 U.S. 529, 538, 119 S.Ct. 1538 (1999), quoting *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362 (1983). Cases in other states show that claims like Martha's should be pursued under 10 U.S.C. 1552. In *Ellison v. Ellison*, 242 N.C.App. 386 (2015), the court said that "[t]he ultimate decision of whether Plaintiff is designated the beneficiary of the SBP continues to lie with DFAS." *Ellison* at 393. "Plaintiff will have to try and convince the Board that correction of the relevant records to include her as the former spouse beneficiary will 'correct an error or remove an injustice[.]'" *Id.*, quoting 10 U.S.C. 1552(a)(1). Similarly, in *Bridges v. Bridges*, 267 N.C.App. 511 (2019), the court said: "The decision on whether to correct defendant's military records to show appellee as the SBP beneficiary lies with the Board, not the trial court. The proper place for appellant to make her arguments regarding appellee's alleged failure to timely request the designation, and regarding federal preemption is not in our courts but before the board." *Id.* at 570. And in *Alston v. Alston*, 960 So.2d 879 (Fla.App.2007), after the former wife's application for SBP benefits was rejected as untimely, she sought relief from the Army Board for the Correction of Military Records. Martha too should bring her SBP claim before the appropriate military Secretary.

{¶ 40} Whether because there is no genuine issue of material fact or because no relief can be granted, summary judgment is appropriate on Martha's claim for the SBP benefits. *See Bailey v. Bailey,* Case No. 1:13-CV-00039-DMB-DAS, 2014 WL 4716345 (N.D.Miss.2014) (holding that summary judgment was appropriate on similar facts).

### III. Conclusion

{¶ 41} Martha fails to convince us that the trial court erred by denying her summary judgment and granting Marsha summary judgment. The sole assignment of error is overruled. The trial court's judgment is affirmed.

BYRNE, J., concurs

PIPER, P.J., concurs in part and dissents in part.

**PIPER, P.J., concurring in part and dissenting in part.**

{¶ 42} The majority concludes Martha" "fails to convince" them, yet it is Marsha who needs to demonstrate as a matter of law she is entitled to summary judgment. I concur in Martha *as movant* not receiving summary judgment, therefore, I only address the circumstances herein where Martha as the *nonmovant* had summary judgment awarded against her. It is in this respect I disagree.

### A. PRELIMINARY OVERVIEW

{¶ 43} My colleagues fail to address Marsha's initial burden in these summary judgment proceedings, instead moving directly to examining whether Martha, as the nonmovant for summary judgment, disproved the allegations levied against her.[3] In so doing, for the first time on appeal, the opinion of my colleagues constructs an argument, previously forfeited in the trial court, that Martha's deposition testimony was objectionable even though there was no objection. The reasoning of the construct then proceeds to label Martha's testimony as "speculation" unworthy of considering it in favor of Martha, the nonmoving party. ¶ 21-28 above.

---

3. The majority's analysis spends considerable effort in isolating and dispelling Martha's arguments as to why she believes summary judgment shouldn't be granted. Yet the analysis should begin with examining what evidentiary support exists which support Marsha's arguments (the moving party) as to why summary judgment must be granted.

{¶ 44} This construct ignores the fact that it was the moving party, Marsha's counsel, asking the questions as if on cross, developing the testimony. The reasoning, not briefed or argued on appeal, then concludes Martha's testimony is prohibited from consideration because Martha was an incompetent witness and her testimony inadmissible. ¶ 25 above. However, it must first be noted that summary judgment for either party is premature because dueling allegations require more. There must be affirmative evidentiary support for their respective allegations, which the record lacks.

{¶ 45} Furthermore, even assuming Marsha produced evidentiary support for her summary judgment motion, Martha reciprocated by sufficiently raising genuine issues of material fact disputing Marsha is entitled to summary judgment as a matter of law. Reasonable minds could well conclude John's alleged misconduct is tantamount to fraud such that it creates an exception to federal preemption. The majority opinion oversimplifies the nature of John's misconduct then applies similar examples as dispositive. However, a broader perspective of John's misconduct, not so narrowly construed, would find the facts in those examples distinguishable and inapplicable.[4]

## B.  SUMMARY JUDGMENT REVIEW

{¶ 46} It is noted in the majority's opening analysis that Martha, as the nonmovant, is entitled to have all facts construed most strongly in her favor. However, Martha has not had the existing, albeit shallow, record construed most strongly in her favor.

{¶ 47} Summary judgment is to be used with caution resolving all doubts in favor of the nonmoving party. This is because it precludes the nonmovant's access to a jury's

---

4. The majority simplifies Martha's allegations as though the wrongful conduct she complains of is only "John's exercise of his power to make the change [of beneficiary]" and that she doesn't allege the change of beneficiary itself was fraudulent. ¶ 16 above. Yet, Martha makes it clear she considers John's going to the Florida court a second time seeking a reduction in the amount of support to be paid while knowing he was not providing her support payments any protection, but concealing it from the Florida court, leading her, and the Florida court, to believe protection was being provided, was misconduct resulting in conversion, fraud, and breach of trust.

determination upon a full presentation of the evidence for resolution of disputed issues. *State ex rel. Yost v. Settlers Walk Home Owners Assn.*, 12th Dist. Warren No. CA2021-11-102, 2022-Ohio-3106, ¶ 24. Due to the nature of summary judgment as a truncated proceeding, Ohio courts have routinely determined it must be used "sparingly." *Id.*

### 1. Movant has the Initial Burden before Shifting Burden to Nonmovant

{¶ 48} In *Dresher v. Burt*, 75 Ohio St.3d 280, 285 (1996), the question being answered by the Ohio Supreme Court was, may "a court grant summary judgment when *neither* the movant nor the non-movant provides evidentiary materials demonstrating that there are no material facts in dispute and the movant is entitled to judgment as a matter of law?" The answer was that a court *may not* grant summary judgment to a moving party in the absence of supporting evidentiary materials. *Id.* at 296.

{¶ 49} The court's rationale determined that the moving party does not discharge its initial burden with a mere assertion the other party has no evidence to prove its case. *Id.* at 293. The moving party must specifically point to evidence that affirmatively demonstrates the nonmoving party has no evidence to support its claims. *Id.* Only after the moving party meets its initial burden does the nonmoving party have a reciprocal burden. Civ.R.56(E).

{¶ 50} "The forgoing principles have been firmly established in Ohio jurisprudence for some time." *Dresher* at 294. The party moving for summary judgment must present affirmative proof that the nonmovant cannot prove their claim *before* the nonmovant has a burden to make an evidentiary response. *Busch v. Premier Integrated Med. Assocs., Ltd.*, 2d Dist. Montgomery No. 19364, 2003-Ohio-4709, ¶ 61-62; *Bohl v. Travelers Ins. Group*, 4th Dist. Washington No. 03CA68, 2005-Ohio-963, ¶ 19-20.

{¶ 51} Marsha, as the party seeking summary judgment, must discharge the initial responsibility to identify depositions, answers to interrogatories, admissions, together with any affidavits which demonstrate the absence of a genuine issue of material fact. Here

Marsha merely makes accusations that Martha can't prove John's misconduct as being an exception to preemption. Marsha attempts to characterize Martha's answers when being deposed, yet Martha's responses are subject to interpretation and must be viewed in the light most favorable to her. Marsha accuses Martha of not having proof of her claims, but Martha doesn't receive a reciprocal burden based upon mere accusations. The majority analysis neglects to address Marsha's initial burden before any burden shifting takes place.

{¶ 52} Marsha's argument, accepted in the majority's analysis, is that the nonmovant, Martha, "had every opportunity to present evidence of fraud and failed to do so." However, as movant for summary judgment Marsha needed to first affirmatively establish the absence of fraudulent misconduct *before* Martha receives a reciprocal burden to present evidence establishing the fraudulent misconduct. Marsha is not entitled to merely rest upon her allegations.

{¶ 53} Similarly, when considering the Survivor Benefit Plan, Marsha merely argues that Martha offered "no proof that an election was made under the statute." Again, the mere challenge to Martha to prove an actual election timely occurred does not place a Civ.R. 56 (E) reciprocal burden upon Martha. Marsha's arguments that minimize the significance or meaning of Martha's responses fail to meet Marsha's initial burden as the moving party.[5]

{¶ 54} The majority finds Martha's deposition testimony meaningless because her testimony relates "a statement other than one made by the declarant." ¶ 24 above. Yet, Martha repeatedly indicated her attorney sent, and received a response, and that the necessary paperwork was done on her behalf. She spoke of acts *she* had her attorney perform for her, not of statements from another. Furthermore, Martha was never asked the

---

5. When questioned about making the appropriate election, giving notice of her claim, Martha said, "Sir, I have an attorney that did all that paperwork for me.…My attorney did it, sir." Dep.11. Marsha's counsel asked follow up questions regarding the same subject wherein Martha answered, "My Florida attorney handled all that paperwork, yes, sir." Dep.13. However, the majority seems skeptical, saying, "There is only her testimony." ¶ 22 above. For summary judgment purposes, her testimony is sufficient.

basis of her knowledge. In sua sponte excluding Martha's testimony, the majority does not take into account that the testimony was actually elicited by Marsha's counsel. The majority instead speculates as to whether Martha had personal knowledge supporting what her attorney did for her but ignores that Martha was never asked what the basis of her testimony was.

{¶ 55} In asking her attorney to send a letter on her behalf, the only reasonable inference is that the letter was sent. When it came out at the deposition a letter existed from the Florida attorney, Marsha's counsel formally requested a copy of it. Marsha emphasizes that neither party has made the letter part of the record, yet the letter's existence remains undisputed.

{¶ 56} The majority's construct undermining Martha's deposition testimony acknowledges that Marsha's counsel never objected nor moved to strike the testimony he himself developed. Marsha instead switches arguments saying that Martha must prove the military Secretary *received* it timely. However, Marsha produced nothing supporting the notion Martha's election was not received, or if received was untimely. Therefore, there was no reciprocal burden placed upon Martha. Marsha could easily have solicited information in discovery to support her accusations. She did not.

{¶ 57} In dismissing Martha's testimony as incompetent, the majority speculates as to Martha's personal knowledge thereby negating the weight and credibility given to Martha's testimony. The majority finds support for declaring Martha an incompetent witness because Martha testified that she did "believe" her attorney did all the proper paperwork. ¶ 26 above. In further cross-examining Martha, the attorney interjected the word "believe" several times which the majority analysis determines means Martha didn't really know the truth of what she was testifying to. I find this hyper-technical assumption a roundabout way of weighing the testimony or judging her credibility. Such would be improper in appellate

review of summary judgment proceedings. *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

## 2. Federal Preemption Law Not Supportive of Summary Judgment

{¶ 58} The majority opinion leans heavily on *Yiatchos* and *Ridgway* but neither case dealt with summary judgment. *Yiatchos v. Yiatchos*, 376 U.S. 306, 84 S.Ct. 742 (1964); *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49 (1981). Both opinions discussed more the initial application of preemption to state law and not the circumstances that define fraud, or a breach of trust tantamount to fraud. Neither case defines what circumstances are tantamount to fraud necessary for an exception to preemption. Significantly, the *Yiatchos* court remanded the case to develop a factual record on whether the conduct was tantamount to fraud qualifying as an exception to preemption. *Yiatchos* at 310, 313. This case is no different and requires a remand as well.

## 3. Allegations Don't Satisfy Burden nor Shift Burden to Opposing Party

{¶ 59} As the party not moving for summary judgment, Martha possessed no burden of producing demonstrative evidence in response to bare allegations. Marsha produced no evidentiary material that Martha's attorney did not send a letter on Martha's behalf nor that the letter was not received untimely. Similarly, Marsha produced no evidentiary material which demonstrated that Martha cannot prove John's conduct was a breach of trust tantamount to fraud. Thus, at such an undeveloped stage of summary judgment proceedings, no reciprocal burden shifted to Martha. The majority failed to properly apply *Dresher v. Bert* as Martha requested in her brief.

## C. EXCEPTION TO PREEMPTION

{¶ 60} In Florida, to the extent necessary to protect an award of alimony the trial court may order the obligor maintain existing life insurance, purchase life insurance, or otherwise secure the alimony award with other assets. Fla.Stat. 61.08(3). The trial court is authorized by sections 61.08(3) and 61.13(1)(c) to require the purchase or maintenance of

life insurance to secure the award of alimony support. Evidentiary findings are required of the special circumstances justifying the court's order. *Kotlarz v. Kotlarz*, 21 So.3d 892, 893 (Fla.App. 2009). In the instant case, Marsha acknowledges John was in arrears even before he completely quit paying his support obligations in 2016. Therefore, the Florida court's order to protect Martha's support award was appropriate foresight.

{¶ 61} There are numerous cases as examples cited by the majority supporting their determination that John's deceptive conduct would not be recognized as an exception to preemption. ¶ 7-10 above. All those cases, however, lack similar factual circumstances, and none are binding authority. The attempt to define the extent of John's misconduct, and whether it was fraudulent or a breach of trust tantamount to fraud, further illustrates that summary judgment as a matter of law was inappropriate. The record demonstrates John's misconduct was the very definition of fraud: the intentional deception or concealment to secure unfair or unlawful gain or to deprive another of a legal right. *Black's Law Dictionary* (6th Ed.1990). Importantly, the record must be construed, and all inferences made, in favor of the nonmoving party, Martha. *Hall v. Tucker*, 4th Dist. Jackson No.04CA2, 2005-Ohio-2674, ¶ 35.

### 1. No Definition for "Breach of Trust Tantamount to Fraud"

{¶ 62} In order to limit the circumstances that would create an exception to preemption, the majority suggests that *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 581 (7th Cir.1992), determines that *Ridgway* provides guidance that fraudulent conduct must involve *the victim's own property.* However, on that point, *Metropolitan Life v. Christ* only references a footnote in *Ridgway* which was dicta. The footnote was simply an attempt to diminish Justice Powell's dissent which argued that preemption did not apply. Furthermore, dicta is not authoritative and not instrumental to substantive law. *Gissiner v. Cincinnati,* 1st Dist. Hamilton Co. No. C-070536, 2008-Ohio-3161, ¶ 15; *State v. Gwynne,*

158 Ohio St.3d 279, 2009-Ohio-4761, ¶ 21 (Justice Kennedy concurring joined by Justice DeWine, determining dicta should not be used by reviewing courts in establishing legal precedent).

{¶ 63} In *Metropolitan Life Ins. Co. v. Christ* there was a simple failure to designate a beneficiary. It did not involve circumstances where a dissolution resulted in the irrevocable maintenance of existing life insurance to protect an alimony award, with a subsequent appearance before the court concealing that the previous order had already been breached. The only reasonable inference from the proceedings is that John knew in seeking a reduction of the alimony support the court would simultaneously reduce the amount of insurance required to protect the reduced amount. The truth was concealed from the court—all of this orchestrated with an intention not to provide any insurance, from any policy, for the former spouse. Clearly a design to deprive her of the right for protection of her alimony support. *Metropolitan Life Insurance v. Christ* with its reference to *the victim's own property* has little to offer in evaluating whether John's misconduct was a breach of trust tantamount to fraud or his conduct comprised a fraudulent misrepresentation.

{¶ 64} The United States Supreme Court has acknowledged that federal law was not to be used "as a shield for fraud or to prevent relief where the circumstances manifest fraud or a breach of trust tantamount thereto * * *." *Yiatchos*, 376 U.S at 307. Later, the *Ridgway* court considered whether the misconduct supported a claim of conversion. *Ridgway*, 454 U.S. at 58. The court did not limit itself to a strict and narrow interpretation of fraudulent misconduct; it specifically broadened its consideration to include conversion as conduct tantamount to fraud. With no definition of what constitutes an exception to preemption, Martha's claims should have survived a premature motion for summary judgment.

{¶ 65} Circumstances must not be interpreted to favor implied preemption because there is a legitimate state interest in avoiding unintended encroachment on the authority of

the state. Therefore, a presumption against preemption is the proper starting place for any analysis. *Jenkins v. James B. Day & Co.,* 69 Ohio St.3d 541, 544, 1994-Ohio-63. Similarly, exceptions must not be so narrowly interpreted with such disfavor as to actually favor preemption. *See State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 165 Ohio St.3d 213, 2021-Ohio-2121; and *State v. Warner*, 55 Ohio St.3d 31, 68 (1990) (security fraud encompasses violations tantamount to fraud).

{¶ 66} At least one Ohio court has determined there is a rebuttable presumption against preemption, and when considering "fraud or breach of trust tantamount thereto" preemption can be avoided and a state remedy appropriate when "[f]or example such as the case where the insured has been coerced or unduly influenced in his or her selection of a beneficiary * * *." *Concepcion v. Concepcion,* 131 Ohio App.3d 271, 280-282 (3rd Dist. 1999). Factual scenarios of misconduct that qualify as an exception to preemption should not be so narrowly interpreted as to favor preemption. When the degree of misconduct is factually disputed, the exception should not be determined in summary judgment proceedings as a matter of law.

{¶ 67} Both the trial court and the majority herein cite *Metro. Life Ins. Co. v. McMorris*, 786 F.2d 379, 380 (10th Cir.1986) as being most like John's misconduct. Yet, in *McMorris*, the "fraud" was simply a beneficiary change after there had been a prior state order with a different named beneficiary. There was no insurance in existence to be irrevocably maintained to protect alimony support. There was no subsequent appearance in court to lower the amount of alimony resulting in a reduction of the protective insurance. There was no prehearing manifested intention not to provide any insurance no matter what the court ordered at the hearing. Deception was employed so that additional insurance would not have to be purchased. The circumstances in *McMorris* are more like those in *Metropolitan Life ins. Co. v. Christ* and they offer little insight to defining the circumstances considered a

breach of trust tantamount to fraud.

{¶ 68} It is undisputable *Yiatchos* indicates conduct tantamount to fraud can be an exception to preemption. It is also undisputable that simply designating a beneficiary different from the beneficiary ordered in a state decree may not alone amount to fraud. But here the circumstances are surrounded in a different light. The majority portrays an unnecessarily limited perception of John's misconduct, suggesting there "is not fraud in the beneficiary change per se." Applying an overly simplified characterization of John's misconduct is problematic due to reasonable inferences that arise from the Florida hearing. What occurred here is more than a mere switch in beneficiary designation. John didn't want to be ordered to purchase additional insurance, so he concealed his contempt of court and perpetrated a falsehood.

{¶ 69} In Florida state law when alimony is awarded the court also may order the purchase, or maintaining, of insurance to protect future payment of alimony. Because John had his veteran's life insurance already in place at the time of the initial order with Martha as beneficiary, the court had no need to order an additional policy. The dissolution resulted in the existing insurance to be maintained "irrevocably" protecting owed alimony payments. John subsequently changed the beneficiary designation to his current wife, Marsha; the only reasonable inference is John concealed the fact he dropped the insurance to protect her support. John obtained a court reduction of the amount he was obligated to pay Martha in alimony and a reduction of the amount of life insurance to be maintained. He did this knowing he was never going to maintain any insurance protecting the alimony because despite the court's order, he had already terminated her protection.

{¶ 70} John deceived the court, and Martha, by fraudulently concealing he had already dropped Martha as beneficiary. Had the truth not been concealed, the Florida court would have ordered a separate life insurance policy on Martha's behalf to protect her future

alimony payments. John's plan required he conceal the truth from the court in order to benefit his current wife, yet to the detriment of his former wife, and in defiance of the Florida court's order. The scenario here is distinguishable from those in *McMorris* and the other cases cited by the majority. A reasonable person could easily find John's conduct was fraudulent or a breach of trust tantamount to fraud.

{¶ 71} Any insinuation John had no obligation to be truthful when seeking a review by the Florida court would be disturbing. John knew he had already deleted Martha as beneficiary from the veteran's policy and that he had no intention of purchasing a separate policy to comply with the court's order protecting the alimony payments. The integrity of judicial decisions with a mission of fairness cannot acquiesce to silent deception or gamesmanship aimed at thwarting that very mission. Those appearing before the court, whether in person or on paper, are obligated to be completely truthful. John's misconduct in seeking his best advantage required deceiving the court, and Martha, and could reasonably be considered fraudulent or a breach of trust tantamount to fraud. Changing beneficiaries may have merely been conduct evidencing a contempt of the Florida court's initial order, but appearing before the court subsequently to obtain further modifications, while withholding information known only to John, has the strong inference of fraudulent concealment. Obviously, if John had disclosed to the court he was no longer protecting Martha's support payments with the veterans policy , the court would have ordered a new, separate policy be purchased in its place.

## 2. No Relevance to the Issues at Hand

{¶ 72} My colleagues suggest the result of these proceedings is not "as harsh as it might seem" because Martha "sat on her hands" and hadn't "asserted her right to proof." ¶ 17 above. Yet they fail to observe Martha's financial resources were lacking since payment of her alimony support was erratic and then completely stopped in 2016. Whether she was

distracted by other concerns, trusted John, or desired as little contact as possible, is not relevant.  Regardless, Martha's failure to hire an attorney doesn't mitigate the result of John's hurtful gamesmanship involving fraudulent concealment.

### D.  SURVIVOR BENEFITS

{¶ 73} Marsha as the moving party claims that here was no proof offered by Martha that a timely election was made to, or received by, the appropriate military Secretary pursuant to 10 U.S.C. 1450(f)(3)(A).  In supporting this argument Marsha, as does the majority, interprets Martha's responses *against* Martha, instead of in her favor.  Yet as addressed previously, Martha has no reciprocal burden to prove anything until Marsha offers proof supporting her allegation.

{¶ 74} Marsha cannot merely allege Martha's election for benefits was untimely and demand Martha to prove differently.  Both parties have a letter on the subject from Martha's Florida attorney (confirmed at oral argument) and neither admitted it into the record.  But it is the movant that has the initial burden of producing evidence as to its untimeliness before the nonmovant has a reciprocal burden.

### 1.  The Election for Benefits

{¶ 75} If Martha acknowledged during her deposition no election letter was sent, or if she had given an untimely date it was sent, Marsha would have met her initial Civ.R. 56(E) burden.  But these questions were not asked and the answers cannot be assumed.  There were no interrogatories, requests for admissions, or depositions eliciting support for Marsha's allegations.  In negating Martha's deposition testimony that she had her attorney make the election regarding her claim for benefits, the majority concludes "Martha's testimony lacks a permissible basis".  ¶ 27 above.  Respectfully, such conclusion is a mistake in contravention of the requirement that appellate review consider summary judgment evidence most favorably for the nonmoving party.

{¶ 76} Marsha suggests that Martha did not make her election personally. The fact that her attorney presented her claim on her behalf is of no consequence. Legal jurisprudence has long recognized attorneys act as professional representatives for those they serve. If we were to trample into the weeds, it's notable the statute does not require the claim be presented *personally*–the purpose of sending a letter claiming entitlement is to identify the claimant and put the governmental agency on notice. No authority has been presented suggesting legal counsel cannot fulfill this purpose on behalf of the client; therefore, we should not be persuaded differently.

### 2. No Authority to Grant Relief

### a) Preemption may not apply due to exception

{¶ 77} The majority also sua sponte holds that summary judgment is correct because the trial court had no authority to provide relief. This clearly places the cart before the horse. *Yiatchos* specifically indicated that when the circumstances manifest fraud or a breach of trust tantamount thereto, relief is not to be withheld. The first step in seeking that relief is determining if an exception to preemption exists. Recognizing this, the parties by agreement are having the funds placed in a trust account. The majority opinion presumes no exception to preemption exists and speculates Martha faces a dead-end path. Yet the road takes a significant turn if preemption *does not* occur because an exception to preemption applies. An equitable constructive trust is a viable remedy.

### b) Cited law also presumes no exception to preemption

{¶ 78} The majority opinion finds cases from other jurisdictions convincing, yet few involve an exception to preemption. The cases cited are distinguishable, and none binding authority. None of those cases involve circumstances where a former spouse was owed significant arrears in alimony support, had a right to protection, and the obligor return to court knowing he had already cancelled the insurance protection, in defiance of the court,

and had no plans to provide the protection in the future.  None of these cases involve a person sitting silently before a court so that the court would reach a decision that couldn't be fulfilled.

{¶ 79} In considering whether John's gamesmanship was a fraudulent concealment or a breach of trust tantamount to fraud and thus an exception to federal preemption, we should look for consistency in the federal statutory scheme.  Where federal law contemplates that those who are the victim of deceit should be compensated their actual loss, 18 U.S.C. 3663A(c)(1)(A)(ii), an equitable remedy should do no less.  Deceptive gamesmanship when before a court is not to be rewarded and rightfully fears an equitable remedy.

{¶ 80} John's lack of significant employment, and later health problems resulting in death, gain my sympathies.  Yet his decisions alone placed him between the proverbial rock and a hard place.  The Florida court was receptive to his declining financial situation once, and a prudent, law-abiding person would have approached the court with clean hands seeking further relief.  John did not; he was content to abandon Martha's protection for alimony support in defiance of the court and conceal the truth from the court.

### c) Constructive trust – a relief not litigated

{¶ 81} The majority determines, although not briefed or litigated herein, that Ohio courts have no relief available to Martha.  ¶ 38 above.  However in *Metro Life Ins. Co. v. Mulligan*, 210 F.Supp.2d 894, 900 (E.D.Mich.2002), the court cited a Sixth Circuit decision indicating "[t]he determination of whether a constructive trust should be imposed is a fact-specific inquiry.  The Court may not resolve competing factual claims at the summary judgment stage."  *Id.*, citing *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 449 (6th Cir.2002).

{¶ 82} The suggestion a constructive trust may not be imposed was refuted in *Kent*

*v. Klein*, 352 Mich. 652, 657 (1958), where the court determined: "fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is enough that it [the constructive trust] be unconscionably withheld." Similarly, "as noted previously, fraud is not required in order for a court to impose a constructive trust." *Fischbach v. Mercuri*, 184 Ohio App.3d 105, 2009-Ohio-4790, ¶ 92 (2d Dist.).

{¶ 83} The anti-alienation provision referenced by the majority precludes imposition of a constructive trust *before* distribution of benefits, but does not prohibit imposition of a constructive trust *after* the benefits are paid to the beneficiary. While ERISA has a similar anti-alienation provision, an Ohio court quoted *Partlow v. Person*, 798 F.Supp.2d 878, 881 (E.D.Mich.2011), indicating "[t]he law recognizes a distinction between a plan administrator's obligation to pay over benefits to a named beneficiary and the beneficiary's entitlement to keep those funds thereafter." *Fletcher v. Estate of Fletcher*, 11th Dist. Lake No. 2013-L-084, 2014-Ohio-5377, ¶ 26. Thus, a constructive trust is indeed an appropriate remedy.

### d) Lack of relief not argued before the trial court or briefed on appeal

{¶ 84} Simply put, the trial court's authority to provide relief, or a remedy, was not briefed or argued neither before the trial court in support of summary judgment nor on appeal. The Ohio Supreme Court has cautioned appellate courts that if resolution of an issue is to be premised on law not briefed or argued, the parties must have an opportunity to brief the law. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 21, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170 (1988) ("[A]ppellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue'"). Furthermore, the argument is forfeited for appellate review purposes if not argued before the trial court. *Capital Real Estate Partners, LLC v. Nelson*, 12th Dist. Warren Nos. CA2018-08-085 and CA2018-08-094, 2019-Ohio-

2381, ¶ 23. Therefore, appellate review missteps in determining summary judgment is appropriate because there is no available relief to be offered by Ohio courts.

### E. CONCLUSION

{¶ 85} There is a reason Martha requested we review and apply *Dreshner v. Burt,* and it has been demonstrated there was good reason. The record is absent evidentiary materials necessary to proceed with summary judgment. Dueling allegations are simply insufficient to satisfy legal determinations in summary judgment proceedings. Therefore, I would affirm the trial court in denying summary judgment against Marsha, but would reverse the trial court in granting summary judgment against Martha.

{¶ 86} Furthermore, when considering an exception to preemption the phase "fraud or breach of trust tantamount thereto" was not meant to deprive relief from deceptive misconduct. The phrase "fraud or breach of trust tantamount thereto" does not exclude from consideration scenarios other than those found in existing case law, but rather includes various scenarios for consideration as they may arise. With no binding authority containing similar facts and circumstances, I would reverse and remand, like the court in *Yiatchos*, for the parties to develop the record as to whether the circumstances create an exception to preemption.