[Cite as *Thomas v. Servicemaster Absolute Cleaning Restoration, Inc.*, 2023-Ohio-1837.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| DARRYL THOMAS SR. | : | |
| | : | |
| Appellant | : | C.A. No. 29651 |
| | : | |
| v. | : | Trial Court Case No. 2021 CV 01541 |
| | : | |
| SERVICEMASTER ABSOLUTE | : | (Civil Appeal from Common Pleas |
| CLEANING RESTORATION INC. et al. | : | Court) |
| | : | |
| Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 2, 2023

. . . . . . . . . . .

THOMAS J. MANNING, Attorney for Appellant

EDWARD J. DOWD and CHRISTOPHER T. HERMAN, Attorneys for Appellees

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Darryl Thomas, Sr. appeals from the trial court's entry of summary judgment against him on his complaint alleging negligence by appellee Servicemaster Absolute Cleaning Restoration, Inc.

{¶ 2} Thomas contends summary judgment was inappropriate because genuine issues of material fact existed as to whether Servicemaster breached a duty of care when

remediating water damage in a home owned by his son. Thomas also contends the trial court erred by finding deposition testimony about what a remodeling contractor told his son to be inadmissible hearsay.

{¶ 3} For the reasons set forth below, we conclude that the trial court properly entered summary judgment against the appellant and that the deposition testimony at issue was inadmissible hearsay. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} On February 11, 2019, a water pipe broke in a vacant home owned by the appellant's son, Darryl Thomas, Jr. The incident caused water damage on the first floor and in the basement. The appellant's son hired Servicemaster to remediate the damage. Servicemaster's work included removing wet drywall and paneling around a staircase leading from the first floor to the basement and drying wet areas. Most of the work was completed by February 21, 2019.

{¶ 5} On April 20, 2019, the appellant entered the house to examine appliances in the basement. He walked down the basement stairs and went back up to the first floor. He then began to walk down the stairs again. As the appellant stepped on the first tread, the staircase broke loose and he fell into the basement. The appellant landed on top of the staircase and sustained injuries to his ankle and shoulder.

{¶ 6} The appellant filed a negligence complaint as a result of the accident. The complaint alleged negligence and negligence per se by Servicemaster. In particular, it alleged that Servicemaster employees had removed structural supports securing the staircase and had failed to inspect the staircase after completing their work.

Servicemaster moved for summary judgment, arguing that it had not removed any structural components of the staircase and that it had had no duty to conduct a post-work inspection of the staircase for structural integrity.

{¶ 7} After briefing, the trial court sustained Sevicemaster's motion in an October 28, 2022 decision, entry, and order. As a matter of law, the trial court found that the appellant's son had hired Servicemaster to remediate water damage and that the scope of its work did not include inspecting the staircase for structural integrity. The trial court also found no genuine issue of material fact as to whether Servicemaster had removed any structural supports from the staircase. Finally, the trial court held that the appellant could not introduce a contractor's opinions regarding the stairway collapse through the deposition testimony of the appellant's son. The trial court found that the appellant's son's testimony about what the contractor had told him was inadmissible hearsay.

## II. Analysis

{¶ 8} The appellant advances the following two assignments of error:

I. THE TRIAL COURT ERRED BY GRANTING APPELLEE SERVICEMASTER'S MOTION FOR SUMMARY JUDGMENT.

II. THE TRIAL COURT ERRED BY CONSIDERING THE OPINIONS OF DOUG BELL, AS TESTIFIED TO BY DARRYL, JR., TO BE IMPROPER HEARSAY EVIDENCE WHEN IT WAS ELICITED BY SERVICEMASTER, NOT APPELLANT.

{¶ 9} In his first assignment of error, the appellant argues that genuine issues of material fact preclude summary judgment for Servicemaster. With regard to removing

structural supports from the staircase, the appellant contends Servicemaster's evidence came solely from franchise owner William Kaska, who was not always present when the work was performed. The appellant characterizes Kaska's testimony as "self-serving" and argues that he had no way of knowing what his employees had removed from the staircase in his absence. The appellant also contends Servicemaster's own website establishes that it had a duty to inspect the staircase for structural integrity after completing the remediation.

{¶ 10} Under Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). Appellate review of summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). "We review the judgment independently and without deference to the trial court's decision." (Citation omitted.) *Id.*

{¶ 11} With the foregoing standards in mind, we see no error in the trial court's ruling. In support of its motion, Servicemaster provided an affidavit from Kaska, the owner of the franchise that performed the work. He averred that the work included "detaching the wall mounted handrail; tearing out wet drywall on the left and right side of the staircase going to the basement; tearing out wet drywall under the staircase; tearing out wet paneling under the staircase; cleaning the floor; and applying anti-microbial agent to the

floor." He further averred that Servicemaster had not removed any structural supports for the staircase. Finally, he averred there had been no bracing under the stairs to support them and that the staircase itself had not been attached to stud walls on either side of it. According to Kaska, his employees traversed the staircase multiple times with no signs of any problem.

{¶ 12} Kaska provided similar testimony during his deposition, explaining that he was familiar with the remediation performed and that it did not include removing any structural supports for the staircase. Kaska testified that he was present at the job site "[s]poradically throughout the day" on every day. Although he was not present constantly to watch what his two employees did, he was familiar with the project and knew that it involved removing non-structural wet drywall and paneling.

{¶ 13} The appellant's son, who was the homeowner, initially admitted in his deposition that he had "no knowledge as to whether Servicemaster removed anything else but drywall in this stairwell[.]" He then clarified that Servicemaster also had removed the "riser" portion of each step as well as a small metal strip running along the two "stringers." Photographs in the record demonstrate that the staircase consisted of a structural "stringer" along each side to which "treads" and "risers" were attached. The treads are the horizontal portions of the stairs where a person walks, and the risers filled the vertical space at the back of the treads.

{¶ 14} Even crediting the appellant's son's testimony, as we must in the summary-judgment context, there is no evidence that the risers or the metal strip provided any structural support for the staircase. The risers simply concealed a vertical gap that existed

at the back of each tread. In his deposition, the appellant's son acknowledged that the only part of the existing staircase that could have attached to a first-floor header was the pointed end of each stringer. He also acknowledged that those stringer ends showed some damage, as if nails had pulled out when the staircase fell. He identified a photograph that appeared to depict nails remaining in the first-floor header where the stringers formerly had been attached. As for the missing metal strip on the stringers, the appellant's son had no knowledge of the metal being a structural component of the staircase and recognized that it may have been decorative.

{¶ 15} The only other evidence came from the plaintiff-appellant, Darryl Thomas, Sr. In his deposition, he acknowledged never being in the home when Servicemaster performed its work. As a result, he admitted an inability to testify about what Servicemaster had done or what structural elements it may or may not have removed. After the staircase collapsed, he did recall seeing one long nail in each side of the first-floor header where the two stringers had been attached. The appellant saw nothing else that appeared to have been securing the staircase or holding it up. But he could not identify "what, if any, structural elements Servicemaster removed from the stairwell when it remediated the water damage." The appellant agreed that the drywall that had been surrounding the staircase was not a structural element, that it did not hold up the staircase, and that it was not strong enough to do so.

{¶ 16} Based on the evidence presented, the trial court found no genuine issue of material fact for trial regarding whether Servicemaster had breached a duty of care or whether it had proximately caused the injury. The trial court reasoned in part:

* * * Kaska in his affidavit and his deposition states that Defendant did not remove anything structural from the stairs. Defendant did not remove anything from the stairs leading to the basement except drywall and paneling. He also states that the drywall and paneling were not supporting the stairs. The Kaska affidavit states that the employees for Defendant went up and down the stairs multiple times and that there was nothing to indicate it was at risk of falling. Defendant also points out that Mr. Thomas Jr. testified that he never performed an inspection of the stairs prior to the pipe bursting.

Plaintiff has not presented evidence that Defendant breached its duty of ordinary care. Plaintiff has the burden of proving by a preponderance of the evidence that Defendant owed a duty to Plaintiff and that Defendant breached that duty. Plaintiff has not presented any evidence that Defendant removed any structural supports from the staircase. Plaintiff admits that he has no evidence or proof that underbracing was ever used to tie the stairs to the stud walls. Plaintiff has no evidence that Defendant removed anything other than damaged drywall and paneling from around the stairs.

* * *

Mr. Kaska has stated that Defendant did not remove any structural supports or hardware from the stairs during the work it performed on the property. There has been absolutely no evidence presented that Defendant did remove the supports or that anything Defendant did or did not do with

respect to the stairs caused them to collapse and in turn caused Plaintiff's injury. None of the witnesses can identify exactly how the stairs were attached and whether they were installed properly. Additionally, Plaintiff's accident occurred on April 20, 2019, two months after the Defendant had completed its work in the basement. There is no evidence presented to the Court as to what occurred to the steps during that time. * * *

October 28, 2022 Decision, Entry, and Order at 5-6.

{¶ 17} Upon review, we agree with the trial court's conclusion. Even accepting as true the appellant's son's testimony that Servicemaster removed risers between the treads in addition to the drywall and paneling, the record contains no evidence that the risers, which simply filled vertical gaps between treads, were structural elements. Kaska specifically asserted in his affidavit and his deposition that Servicemaster did not remove any structural supports for the staircase. Although Kaska was not present during all of the remediation, he testified that he visited the job site daily and that he was familiar with the scope of the work.

{¶ 18} For his part, the appellant presented no evidence that the risers were structural supports. He also presented no evidence that the missing metal strip on the stringers was structural, and his son acknowledged that it may have been decorative. Notably, the appellant admitted his inability to identify *any* structural element that Servicemaster had removed while remediating the water damage. Under these circumstances, the trial court correctly found no genuine issue of material fact as to whether Servicemaster had breached a duty of care by removing structural supports from

the staircase and proximately caused the appellant's injury.

{¶ 19} With regard to Servicemaster's alleged obligation to inspect the staircase for structural integrity after completing its remediation, the trial court also correctly found no such duty. Accompanying Kaska's summary-judgment affidavit was a copy of a cost estimate to perform the remediation work. As it pertained to the staircase and basement, the estimate identified the work as removing a wall-mounted handrail, removing wet drywall and paneling, cleaning the area, applying an anti-microbial agent to the floor, and drying the area. The estimate did not mention removing structural supports or a post-work inspection of the staircase for structural integrity. In fact, Kaska averred that "Servicemaster does not perform building code inspections or inspect or evaluate the structural integrity of buildings or homes, and structures within buildings or homes, including but not limited to staircases." Kaska further averred that the appellant's son had hired Servicemaster to remediate water damage, not to inspect the staircase. Kaska provided similar testimony during his June 27, 2022 deposition.

{¶ 20} In opposition to the foregoing evidence, the appellant relies on Servicemaster's corporate website. In the proceedings below, the appellant cited a web page advertising the company's water clean-up services. It states: "We remove the water quickly and efficiently—before the water starts to cause structural damage and secondary water problems." On appeal, the appellant contends this statement obligated Servicemaster to conduct a post-remediation inspection. Specifically, he reasons that the quoted language imposed a duty of care on Servicemaster to assess the structural integrity of the staircase. The appellant has not identified any other source of this alleged

duty.

{¶ 21} Upon review, we are unpersuaded that the corporate website obligated Servicemaster to inspect the staircase or even created a genuine issue of material fact for trial. In its summary-judgment ruling, the trial court found that the appellant could not explain how the website's language "imposed a duty on Defendant to inspect the staircase for structural integrity." We agree. The quoted language advertises that the company "quickly and efficiently" removes water before it can start to cause structural damage or other more serious issues. The website does not state, or even imply, that Servicemaster actually inspects for structural damage after removing water. In our view, it is unreasonable to infer solely from the language of the website that Servicemaster obligated itself to conduct a post-work inspection of the staircase for structural integrity. For the foregoing reasons, the first assignment of error is overruled.

{¶ 22} In his second assignment of error, the appellant challenges the trial court's determination that certain deposition testimony about the staircase collapse was inadmissible hearsay. This argument concerns the deposition testimony of the appellant's son, Darryl Thomas, Jr.

{¶ 23} During his deposition, the appellant's son explained that he hired contractor Doug Bell to perform remodeling after the staircase collapsed. At one point, Servicemaster's attorney asked whether Bell had examined the wooden header where the stairs would have attached to the first floor of the home. The appellant's son responded affirmatively. Upon further questioning, he proceeded to testify that Bell told him there were "only two nails left in the actual header" where the staircase stringers

would have been attached. According to the appellant's son, Bell stated that there "should have been more reinforcement" or "more screws or something attaching the stairs" to the first floor.

{¶ 24} In its ruling, the trial court declined to consider Bell's statements introduced through the deposition testimony of the appellant's son. The trial court held that the testimony was inadmissible hearsay insofar as it involved the appellant's son repeating what Bell had told him.

{¶ 25} On appeal, the appellant concedes that his son's deposition testimony repeating what Bell stated was hearsay. The appellant nevertheless argues that the testimony was admissible Civ.R. 56(E) evidence because the hearsay statements were elicited by Servicemaster's own counsel, who "opened the door" by inquiring about what Bell said.

{¶ 26} Upon review, we find the appellant's argument to be unpersuasive. When ruling on a summary-judgment motion, a trial court may consider only evidence that would be admissible at trial. *Turnmire v. Turnmire*, 2022-Ohio-3968, 200 N.E.3d 604, ¶ 24 (12th Dist.). This includes hearsay included in deposition testimony, which is inadmissible in the summary-judgment context unless a hearsay exception applies. *Id.* at ¶ 24-25. We note too that under Civ.R. 32(A) a deposition may be used to support a motion only "so far as admissible under the rules of evidence applied as though the witness were then present and testifying[.]" Here the appellant has not identified any hearsay exception that would allow his son to testify about what Bell told him. Therefore, the deposition testimony would be inadmissible at trial, making it improper summary-judgment evidence.

**{¶ 27}** As for the appellant's argument that Servicemaster's counsel "opened the door" to admissibility by deposing the appellant's son about Bell's statements, we disagree. The purpose of a discovery deposition is to allow counsel to elicit information on a potentially wide range of topics. If eliciting hearsay in a deposition "opened the door" and allowed it to be used against the party asking the questions, the utility of depositions would be severely limited, as attorneys asking their questions would have to be very careful. Such a scenario would undermine the "discovery" purpose of a deposition.

**{¶ 28}** Courts have recognized that hearsay objections " 'are not waived by failure to make them during the taking of a deposition.' " *Id.* at ¶ 29, quoting *Golden v. George Gradel Co.*, 6th Dist. Lucas No. L-88-091, 1989 WL 24210, *2 (Feb. 17, 1989). In the same way, we conclude that Servicemaster did not forfeit or waive a hearsay objection through its counsel's deposition questioning of the appellant's son about Bell's statements. In our view, asking questions during a discovery deposition is not the same as, and therefore should not have the same consequences as, "opening the door" at trial by eliciting otherwise-inadmissible hearsay testimony.

**{¶ 29}** We need not dwell on the foregoing issue, however, because Bell's statements to the appellant's son do not affect the propriety of summary judgment. Bell opined to the appellant's son that the staircase had been held up by only two nails and that additional support was needed. Even if these statements were true, neither demonstrated a genuine issue of material fact as to whether Servicemaster negligently removed structural supports securing the staircase as alleged in the complaint. Bell's statements suggested only that the staircase was not adequately supported, not that

Servicemaster had caused it to be in that condition. Therefore, Servicemaster remains entitled to summary judgment even if we assume, purely arguendo, that the trial court should have considered the hearsay deposition testimony. Accordingly, the second assignment of error is overruled.

### III. Conclusion

{¶ 30} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.